## Case No. 11,116.

### PIATT v. OLIVER et al.

[3 McLean, 27.] [1]

Circuit Court, D. Ohio. July Term, 1842.[2]

PARTNERSHIP— OWNERS OF REAL ESTATE — SURVIVORSHIP—TRUSTS—SALE BY TRUSTEE—RIGHTS OF CESTUI QUE TRUST—WARRANTY—HEIRS.

1. The active partner of a mercantile partnership may transfer its funds.

2. Real estate purchased by the partnership is liable for its debts.

3. But the acting partner cannot transfer the real estate of the partnership, the same as personal.

[Cited in Ruffner v. McConnel, 17 Ill. 216.]

4. In chancery such real estate, for the purposes of paying the debts of the partnership, is considered as personal property.

[Cited in Davis v. Christian, 15 Grat. 28; Willett v. Brown, 65 Mo. 142.]

5. But the conveyance of the real estate of the firm, must be made as the statute requires.

6. On the decease of one of the partners, his interests descend to his heirs at law, subject to the debts of the partnership.

[Cited in Merrill v. Downs, 41 N. H. 77.]

7. A partner by failing to contribute his share of the partnership fund, does not, in ordinary cases, forfeit the interest which he already has in the firm. And this is especially the case where no extraordinary emergency exists requiring such payment.

8. A decree may be made as between defendants. The court can only decree as between parties to the suit, but in equity it is not essential, as at law, that the parties litigant should all be on opposite sides of the case.

[Cited in Woolsey v. Dodge, Case No. 18,032.]

[Cited in McCormick v. District of Columbia, 18 D. C. 540.]

9. Where a trustee disposes of the trust property the cestui que trust may claim the thing received, if it can be identified. And this may be done, although the property received may have become greatly increased in value.

10. If the present value be the result of skilful labor, this may not be the case.

11. Where an election is necessary, the parties to the bill praying a specific relief, must be considered as having made it.

12. A trustee may convey his own interest, though the assignment may not convey the interests of his cestui que trusts.

13. The warranty of the ancestor does not bind the heir, where the right does not vest before the fall of the warranty.

[Cited in brief in Scott v. Scott, 70 Pa. St. 247.]

14. A warranty, with assets does bind the heir, and is a good plea in a formedon.

15. The heir is never bound by a warranty unless the ancestor was bound by it.

16. A man cannot bind his heirs to pay a sum of money unless he is himself bound to pay it.

17. The old common law warranty if not in form, in effect, has been superseded by covenants real.

[Cited in Young v. Hargrave, 7 Ohio, 68.]

[This was a suit by Robert Piatt against William Oliver, Micajah Williams, and others.

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Affirmed in 3 How. (44 U. S.) 333.]

It was first heard upon pleas to bill. Case No. 11,114.]

OPINION OF THE COURT. At December term, 1840 [Case No. 11,115] the main principles of this case were considered and decided in the opinion then given. Whether relief to the complainant shall extend to lots numbered one and two, or be limited to the tracts given in exchange for those lots, and which were subsequently purchased by Oliver, was reserved for future decision. An interlocutory decree was entered, directing accounts to be taken, &c., and the reports of the masters being now before the court, the case stands for a final decree. The counsel who now appear for the defendants did not argue the case at the former hearing, and they have been indulged with a re-argument of the whole cause. This course has been recommended, by the great amount of property and the numerous and important principles involved in the decision. But zealous, searching, and able as the arguments have been, on the maturest consideration they have failed to convince the court of any material error in their former views. Among the many points made in the argument, three only will be now considered. These were not raised, or not fully discussed, in the former argument: 1. That the land held by the Port Lawrence Company must be considered as personal property; and as such was liable to be sold by Baum, the principal agent. 2. That the negligence of the complainant worked a forfeiture of his interests. 3. That no decree against Oliver and Williams can be entered in favor of their co-defendants.

That the active partner of a mercantile partnership may transfer its funds placed in his hands, of what character soever they may be, is not doubted; and that real estate, purchased for the purposes of the partnership, is liable for the debts of the concern, is equally clear. But, from these principles, it does not follow that the active partner may transfer the real estate of the partnership, the same as personal. And this is the doctrine for which the defendants' counsel contend. They rely upon the case of Sumner v. Hampson, 8 Ohio, 364, in which the court say: "In the earlier stages of the common law, no proper partnership in lands could subsist; but, as social arrangements became more complex, land was necessarily used in partnership purposes, firstly as auxiliary to the general objects of the association, or received for debts, and more lately as direct capital stock. The cases cited in the argument show, that the same rules which affect chattels have gradually been extended to lands held for partnership purposes; that wherever partners manifest their intention to hold lands as partnership stock, either by express convention or by their course of dealing, it will be treated as such, in all respects, by courts of equity." The conveyance of real property is regulated

by statute, and also its descent; and neither of these modes is affected by any general law of partnership. Although lands belonging to the partnership may be liable for its debts, yet they descend to the heir at law, and do not go to the executor. Neither in their transfer nor descent are they regarded as personal property; but still, in equity, they are considered as liable for the debts of the partnership, and are applied as the personal property of the firm. Mr. Collyer, in his late work on Partnership (page 76), gives the following as the result of the reported cases on this point: "Upon the whole, therefore, the better opinion seems to be, that although the legal estate in freehold property, purchased by partners for the purposes of their trade, will go in the ordinary course of descent, yet the equitable interest in such property will be held to be part of the partnership stock, and distributable as personal estate." To hold that a partner in lands could sell and transfer them as he could a bolt of muslin, would disregard the law and its policy, and would introduce great confusion and uncertainty in land titles.

It is not perceived that the authorities cited can have any bearing in the present case. Nor, in the opinion of the court, has a forfeiture of his right been incurred by the complainant through his negligence, as contended under the second head. A very late case, of Prendergast v. Turton (Michælmas term, 1841), reported in 11 Law J. p. 1, is a strong authority, it is insisted, to sustain the forfeiture. That decision, it seems, was made by Knight Bruce, vice chancellor, in which it was held that a partner in certain mines failing to pay an instalment for some nine or ten years, which the company had no right to demand, forfeited the shares he had paid for. On the supposition that the demand of the instalment was not authorised, which seems to be admitted, the decision of Mr. Knight Bruce was wrong, and, unless sanctioned by higher authority, is entitled to but little consideration. But, if the instalment was properly demanded, the decision was clearly right, as the deed of settlement expressly provided "that, if any instalments on the shares should not be paid within fourteen days after the time fixed for payment, they should be forfeited." There were circumstances, stated in the opinion of the vice chancellor, which authorised the court to refuse to set aside a forfeiture which had been legally incurred. The sum for which the mortgage was given, it was alleged, had been paid by Oliver to purchasers of lots in Port Lawrence, for moneys paid by them and improvements made on their lots; and, it seems, nearly half the amount was for moneys expended by Oliver himself, as he alleged, in paying for and improving lots 223 and 224, which he and Baum jointly purchased. Now there was no special emergency which required the payment of this mortgage debt, or

the small debt on which the attachment issued. The payment was not required for building up the town, but, on the contrary, it was demanded on the hypothesis that the town was to be abandoned. And it may be proper to remark, that although several of the members of the Port Lawrence Company were dead, and others had became insolvent, the remaining partners were abundantly able to pay any just demand against the company. But judging of the intention by the action, the defendant Oliver was more solicitous of using the debt, as a means of possessing himself of the property of the company, than to obtain the payment of it; and through the instrumentality of the mortgage and the attachment, and the co-operation of Baum, for about eight hundred dollars, he did acquire the whole property of the company, and the four quarter-sections owned by the Piatt Company; and by exchanging a part of this property for lots one and two, he acquired town lots 223 and 224, with their improvements, and all the other lots, and their improvements. It was the reimbursement of the purchasers and improvers of these lots, which constituted the mortgage and attachment debts. Here then, it seems, Oliver had all the lots with their improvements, and other property to an immense amount; and yet he, by the purchases under the attachment and the mortgage, had not exhausted half the sum which he paid, as he alleged, to the purchasers of lots. This is a result so extraordinary as to startle a common observer. It shows the strong inducement he had to go against the property of the Port Lawrence Company, rather than against the company or the individuals who composed it. For the protection of property thus acquired, a court of chancery will not be very astute to seek for technical objections, or rules of forfeiture applied in cases wholly dissimilar. The case cited from the Law Journal, in all its essential parts, is unlike the one under consideration.

As regards the third objection, as to a decree between co-defendants, it is laid down in 1 Story, Eq. Jur. 630: "In equity, it is sufficient that all parties in interest are before the court as plaintiffs or as defendants; and they need not, as at law, in such a case be on opposite sides of the record." 2 Story, Eq. Jur. 729: "In courts of equity, persons having very different and even opposite interests are often made parties defendant." And the court decreed as between co-defendants, in the case of Chiles v. Boon, 10 Pet. [35 U. S.] 177. It seems, therefore, that it is conformable to the rule of proceeding in chancery to decree, as between defendants, where they set up conflicting rights.

We come now to consider the point reserved, whether the relief shall be extended to lots one and two, or limited to the property given in exchange for those tracts, and which was afterwards purchased by Oliver. Although the tracts of land conveyed to the

Michigan University, in exchange for lots one and two, on which the town of Port Lawrence was laid off, have been purchased by Oliver, yet it appears that he subsequently disposed of a considerable part, if not the whole, of those tracts by valid conveyances, which places such parts, or the whole, beyond the reach of this court. It seems, therefore, that no exercise of the powers of this court can reach this property. The difficulties, great as they may be, in reaching the parts of lots one and two which remain unsold, and the proceeds of those parts which have been sold, are far less than those which attend the other tracts. Lots one and two were received by Oliver, as before remarked, in exchange for the lands of the Port Lawrence Company, tracts three and four, and the four quarter-sections which belonged to the Piatt Company. The Port Lawrence Company and the Piatt Company, therefore, as the cestui que trusts, may claim lots one and two. This is resisted, on the ground that Oliver was guilty of no fraud in the transaction, but acted in good faith; and that there is no case where a trust is raised by implication, that a court of chancery has exacted a penalty from the trustee; that the property has been made valuable by the skill, labor, intelligence, and influence of Oliver and his associate Williams; and that, to require them now to account for the increased value of the property, would be unjust and unprecedented.

The court have taken a very different view of the case, and they suppose that they are sustained by the whole current of authority. In their former opinion the court have not characterised, in strong terms, the acts of Oliver; they supposed it was unnecessary to do so. But they cannot now refrain from saying, that there is nothing in the whole transaction which, in their judgment, can shield him from liability for lots one and two. In 2 Story, Eq. Jur. 502, it is laid down, that "where a party purchases trust property, knowing it to be such, from the trustee, in violation of the objects of the trust, courts of equity force the trust upon the conscience of the guilty party, and compel him to perform it, and to hold the property subject to it, in the same manner as the trustee held it. It has been truly said by an eminent judge, that the only thing to be enquired of in a court of equity, in cases of this sort, is, whether the property bound by the trust has come into the hands of persons who were either compellable to execute the trust, or to preserve the property for the persons entitled to it." 2 Madd. Ch. Prac. 103, 104; Jeremy, Eq. Jur. bk. 2, p. 281, c. 3; Adair v. Shaw, 1 Schoales & L. 262. "Wherever the property of a party has been wrongfully misapplied, or a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form liable to the rights of the original owner, or cestui que trust." The rule is, that property covered with a trust, however converted or exchanged for other property, and into whose soever hands it may pass, with notice, is still charged with the trust. The principle is illustrated in 2 Story, Eq. Jur. 503, by supposing A receives money from B to purchase a horse, and he buys a carriage; B is entitled to the carriage, and may sue for it even at law. And further, "it matters not in the slightest degree into whatever other form, different from the original, the change may have been made, whether it be that of promissory notes, or of goods, or of stock; for the produce of a substitute for the original thing still follows the nature of the thing itself, so long as it can be ascertained to be such."

The case of Docker v. Somes, 2 Mylne & K. 665, goes farther, as to the liability of the trustee, than the case now under consideration. Chancellor Brougham says, "The solicitor general has put a case of a very plausible aspect, with a view of deterring the court from taking the course which all principle points out. He feigned the instance of an apothecary buying drugs with one-hundred pounds of trust money, and earning one thousand pounds a year by selling them to his patients; and so he might have taken the case of trust money laid out in purchasing a piece of steel, or a skein of silk, and these being worked up into goods of the finest fabric, where the work exceeds by ten thousand times the material in value. But these instances, in truth, prove nothing, for they are cases not of profit on stock, but of skilful labor very highly paid; and no reasonable person would ever dream of charging a trustee, whose skill thus bestowed had so enormously augmented the value of the capital, as if he had only obtained from it a profit."

And the counsel for the defendants contend, that the case at bar falls within the category of the cases supposed by the chancellor, in reply to the one put by the solicitor general. And they propose to return the piece of steel or the skein of silk, as all that justice can demand.

Had not this argument been made in a printed form, I should not have supposed it to have been made deliberately. I can suppose a case in which it might have applied. If, of the soil of lots one and two, bricks had been made. potters' ware, or any thing else of great value, and which had been sold for more than ten thousand times the value of the soil, the argument used would be conclusive to show that the cestui que trusts could not claim the sum realised. In the language of Chancellor Brougham, that would not have been a case of profit on stock, but of "skilful labor very highly paid."

What is the case under consideration? Only a part of lots one and two, perhaps less than one-half or one-third, has been sold by the defendants. By the general advance

of the country in improvements and in population, by the great canals made by the states of Ohio and Indiana, which are united and pass through these lots, by the railroad which extends from Toledo to the interior of Michigan, by the great improvements made of the town by the purchasers of lots, and, above all, by the eligible site afforded by tracts one and two for a great city, they have increased immensely in value. Whatever of labor or skill the defendants, Oliver and Williams, may have performed, which conduced to this great result, is a proper subject of compensation; as, also any expenditures which they have made in laying out the town, or in improving it. Even their general superintendency may be satisfied by a just compensation. This case, in fact, differs not in principle from an ordinary one, where, by a disregard of the trust, the trustee, or his assignee, with full notice, comes into the possession of property, which, under propitious circumstances, is rapidly enhanced in value. And it would be a new head in equity, that this rapid advance should shelter the trustee from liability. In plain language, that if the trustee, by his wrongful acts, had made rather a bad bargain, the property in his hands might be reached by the cestui que trust; but if he has shown great sagacity and tact in selecting property so situated, as to outstrip in value all other property in the neighborhood, he is freed from responsibility. At least, that he shall not be held to account for the property at its increased value.

Upon the whole, we think, upon principle and authority, the defendants, Oliver and Williams, are bound to account to the cestui que trusts for tracts one and two. That they must receive a liberal compensation for their general superintendency, the amount of which to be somewhat influenced by the high qualities requisite for the business, and the success with which it was managed. That they shall also be reimbursed for expenditures by them for the laying off, building up, and advancing the town. Those expenditures having been made by them in promoting, as they supposed, their own interest, must be taken to have been made in good faith. Where lots have been sold, and the purchase moneys received, the defendants must account. But for sums lost through the unfaithfulness of agents, they are not to be held responsible.

It is objected, that this is a case requiring an election, and that under no circumstances can relief be given to any of the cestui que trusts, except to the complainant, he being the only one who has made an election. That infants and femmes covert are concerned, who will not be bound by the decree, and may, when they shall become of age or discovert, elect to take the property originally held by the cestui que trusts, or prefer a personal remedy against the defendants, Oliver and Williams.

All the parties in interest are before the court, with very few exceptions, either as complainant or defendants; and, of course, have made their election. And the decree of the court, as above indicated, being manifestly for the advantage of those concerned, would be presumed to have been made with their consent. As to those, if any, who are not parties to the suit, their interests are in no way affected by this proceeding.

Some of the defendants, whose rights are in conflict with those of Oliver and Williams, have not answered the bill; but, with the assent of the complainant, they have been made defendants, and claim under the facts and circumstances set out in the bill. These persons have made their election as fully as if they had answered the bill at length. Indeed, they assent to its truth. And this is the understanding of all the parties concerned. Their rights may be as fully opposed as those of the complainant. In fact, they all claim under the same right, and the only difference between the rights asserted by them and the complainant is, that some of them claim under assignments. These assignments, from the original cestui que trusts, must be proved, and may be controverted by the defendants, Oliver and Williams. In this respect they will have as wide a range, and as ample an opportunity to contest these transfers, as if the claimants were plaintiffs. The court do not perceive much force in the objection, either on the ground of election or inconvenience.

A question is made whether Baum, by his mortgage on the property of the Port Lawrence Company, and afterwards by his assignment to Oliver of the certificates for the same, did not transfer the individual interest he held in that company. Baum undoubtedly had a right to transfer his individual interest in the Port Lawrence Company, at any time, and in any manner, he might choose; and the court think that, although he acted as trustee, and as such transcended his power in attempting to transfer the property to Oliver, yet such transfer must be held good to the extent of his individual interest.

It is contended, that Baum had a right to execute the mortgage as trustee, and that, although the purchase by Oliver under the attachment and the mortgage may be invalid, yet the warranty in the mortgage deed binds the cestui que trusts.

It has already been decided, that the defendants, Oliver and Williams, held the property in trust for the cestui que trusts, with the exception of Baum's interest; and that tracts one and two, having been received in exchange for a part of the above property, and the four quarter-sections owned by the Piatt Company, are also held by them in trust. Now, if the purchase by Oliver, and afterwards by Williams, substituted them as trustees in the place of Baum, giving them a lien only for the money paid by Oliver, it is not perceived how the warranty can have

any effect. A lien on land is not a property in it. The warranty can have no other effect as to the cestui que trusts generally, than if there had been no proceedings on the mortgage. It may, perhaps, estop the heirs of Baum, so far as they may claim his interest by descent. But it is contended that the warranty estops the right set up by the heirs of Baum, which they purchased long after his decease, with assets of the estate that descended to them; and it is supposed that the rule in Shelley's Case applies to the one under consideration. That rule is, "when the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance an estate is limited, either immediately or mediately, to his heirs in fee or in tail, that always in such cases the words heirs, &c., are words of limitation of the estate, and not words of purchase." The court do not perceive the application. No part of the right referred to ever vested in Baum, and, of course, it did not descend to his heirs. The heirs acquired it by purchase, and, as regards the present question, it is immaterial whether the purchase was made with the assets of the estate descended to the heirs, or with other means. A warranty must be annexed to some estate which is capable of supporting it; for, if a person covenants to warrant land to another, and makes him no estate, or makes him an estate that is not good, and covenants to warrant the thing, in these cases the warranty is void. 4 Cruise, Dig. 378. The warranty must take effect in the lifetime of the ancestor, who must be bound by it; for the heirs shall never be bound by an express warranty, unless the ancestor was bound by it. And the heir must claim in the same right that the ancestor did. Id. 379. Where the right is not in esse in the heir, or any of his ancestors, at the time of the fall of the warranty, there it shall not bind. Also, a warranty shall never bar any estate that is in possession, reversion, or remainder, that is not divested, displaced, or turned to a right before or at the time of the fall of the warranty. Co. Litt. 259. By the common law, the heir shall never be bound to any express warranty but where the ancestor was bound by the same warranty; for if the ancestor were not bound, it cannot descend upon the heir. If a man make a feoffment in fee, and bind his heirs to warranty, this is void, because the ancestor himself was not bound. Also, if a man bind his heirs to pay a sum of money, this is void. Co. Litt. [Thom. Ed.] 262, 263.

From these authorities it is clear that, in all cases of lineal and express warranty, the heir is not bound unless the ancestor was bound; so that, at some time before the death of the ancestor, the right must vest in him and descend to the heir, to bind the heir by the warranty. Now the right in controversy was not in esse at the decease of Baum, but was purchased by his heirs subsequently to his death. The warranty, therefore, was never binding on him, and cannot bind his heirs. This conclusion is not shaken by the position of the defendants' counsel, that a lineal warranty with assets will bind the heir. That doctrine was laid down by Littleton, on which Coke says (Co. Litt. [Thom. Ed.] 325), "Here it appeareth by Littleton, that a lineal warranty and assets is a good plea in a formedon in the descender, wherein it is to be known that if tenant in tail alieneth with warranty and leave assets to descend, if the issue in tail doth alien the assets and die, the issue of that issue shall recover the land, because the lineal warranty descendeth only on him without assets; for neither the pleading of the warranty without the assets, nor the assets without the warranty, is any bar in the formedon in the descender. But if the issue to whom the warranty and assets descended had brought a formedon, and by judgment had been barred by reason of the warranty and assets; in that case, albeit he alieneth the assets, yet the estate tail is barred for ever." The old common law warranties, if not in form, in effect have been superseded by covenants real. 2 Bl. Comm. 304. No personal action lay at common law upon the warranty; and when an action was brought, as, for instance, a common recovery against the tenant, he vouched his warrantor who was duly summoned to appear; and judgment was given, that the demandant shall recover seisen of the lands in question, and that the tenant shall recover against the voucher lands of equal value to those warranted by him and now lost by his default. In the same page Coke says, "If the heir in tail bringeth a writ of formedon, and a lineal warranty of his ancestor, inheritable by force of the tail, be pleaded against him, with this, that assets descended to him of fee simple which he hath by the same ancestor that made the warranty; if the heir that is demandant may annul and defeat the warranty, that sufficeth him; for the descent of other tenements of fee simple maketh nothing to bar the heir without the warranty." Now, under the old forms of proceeding on the warranty, the heirs of Baum would not be bound, for the reason that he was not at any time during his life, the right or estate not being in esse. But, in addition to this consideration, no judgment is now given against the vouchee for other lands of equal value on his warranty, but a personal action is brought on his covenant. We think that the sale to Rowan of the interest of Steel in the Port Lawrence Company, under the deed of trust to Edwards, was valid; and also the transfer of one and a half shares to Ewing by Rowan. And the transfer of Mack and others to Ewing of their interests, we also think is sufficiently proved.

[On appeal to the supreme court the decree subsequently rendered in this court in conformity with the opinion above and that in case No. 11,115 was affirmed. 3 How. (44 U. S.) 333.]