## MERRILL *v.* DOWNS.

In an action of assumpsit to recover the price of land paid by the plaintiff to the defendants as partners, on a week day, pursuant to an executory contract previously made, on Sunday, by the plaintiff with one of the defendants, subject to the subsequent approval or rejection of the other, who refused to confirm the sale and convey the land ;—*Held*, that the contract being executory in its character, and not completed on Sunday, was not rendered so far illegal as to prevent the recovery of the price paid in this form of action.

Letters addressed by the plaintiff to the defendants being part of the *res gestæ*, were properly admissible to show a legal demand of a conveyance of the land, or the repayment of the money.

ASSUMPSIT, brought by George W. Merrill against Aaron Downs and Simon E. Downs, partners, under the firm of A. & S. E. Downs, to recover the sum of forty-five dollars, alleged in different counts to be money paid for the defendants at their request, money lent to them, and money had and received by them to the plaintiff's use.

It appeared in evidence that the plaintiff lived at Milton, in this county, and the defendants near Boston, Mass. They were half brothers of the defendant's wife. About the 1st of December, 1856, the plaintiff had a conversation with

Simon about purchasing real estate of him. About Christmas, of the same year, Simon was again at Milton, at the plaintiff's house, which was upon land he had purchased of the defendants. The house was owned by another person, of whom the plaintiff bought it. There was talk of the plaintiff purchasing another piece of the defendant's land adjoining his lot, but they differed about the price ; Simon asking fifty dollars and Merrill offering forty dollars. On the Sunday morning following, Simon came with Nathaniel Parker, whose wife was own sister of the plaintiff's wife, to the plaintiff's house. He was in bed. Simon said to him, I have come on purpose to sell you that piece of land, and the plaintiff then got up. The parties went out together to the barn, and the negotiation was resumed. They first agreed on the bounds of the land which Simon would sell. The plaintiff then offered him forty-five dollars for the land, and Simon said, It is a bargain. They were standing near the barn, where they could see nearly all the land in question, and no other person was present. In the course of the same forenoon the parties again met, and Simon said to the plaintiff, We don't want to make out a deed till Aaron can see the land, as he owns it with me. I want you to send us forty dollars, and pay Martha P. Downs (who was his mother), five dollars between now and spring. Aaron will be down next summer, and will give you a deed when he comes. The plaintiff said, Suppose Aaron won't agree to it when he comes. Simon replied, He will. If not, send us word at any time, and we will send you the money. The plaintiff then said, On those conditions I will pay the five dollars to Mrs. Downs, and send the money to you. During this conversation no other person but these two were present.

On the 3d of April, 1857, the plaintiff sent to the defendants forty dollars, by Elliott S. Dorr, and they sent back a receipt, as follows : " April 4, 1857. Received forty dollars for land, of Elliott Dorr. S. E. & A. Downs."

On the 8th of April, 1857, he paid to Mrs. Downs five dollars, and took a receipt, as follows: "Received of A. & S. E. Downs five dollars, as a present, by the hand of George .W. Merrill. Milton, April 8, 1857. Martha P. Downs."

Elliott F. Dorr testified that on the 4th of April, 1857, he carried forty dollars from the plaintiff to the defendants, at Boston, and received the receipt before stated. He met Simon in the entry of their office, gave him a letter from the plaintiff, and counted out and handed to him forty dollars. He read the letter, counted the money, and said it was right. He then asked the witness into a room, where Aaron was sitting at his desk, and he went in. Simon handed the letter and the money to Aaron, who read the letter and counted the money. Aaron said, Here is only forty dollars. Simon said, It is all right. I told him to send us forty and pay the old lady five dollars. The witness understood Simon, in conversation with his brother, to say they were to give Merrill a deed when Aaron went down. The witness objected to the receipt, because it did not refer to the money as received from Merrill by him; but Simon said, in Aaron's presence, " No matter; you are a witness we have got the money."

A letter was produced by the defendants, on notice, and put in evidence by the plaintiff, addressed to A. & E. Downs, Boston, Mass., as follows: " Milton, April 3. I send by the bearer, Elliott F. Dorr, the sum of forty dollars, for the land. Please send a receipt for the money. Please send a line so I can show to Eri, to get some stones to build a wall. Yours, George E. Merrill."

It appeared by the plaintiff's testimony that Aaron Downs came to his house in August, 1857. He said, I suppose you want us to give you a deed of a piece of land you bought of us. The plaintiff said he did. Aaron said, I suppose you can compel us to give you a deed, but we shall not do it, unless you do compel us. The plain-

tiff said, I want the deed, as Simon and I agreed, without any compulsion. Aaron said he should have nothing to do with it, as the land was worth a great deal more than Simon sold it for. The plaintiff told him, Then I want the money, and must have it; to which Aaron said they had got his money, and should not pay it back.

The plaintiff testified that when he talked with Aaron, there was no change in the bargain he made with Simon, and that there was no other bargain than that made on Sunday with Simon, either before or after. The receipt for the forty dollars was in the hand-writing of Aaron.

Before the plaintiff commenced his suit he wrote several letters to the defendants, stating the bargain, and requesting them to perform it. To these letters no answers were returned. They were put in evidence, being produced by the defendants on notice, and were referred to at the argument. One of these, dated October 27, 1857, contained these words: "You promised to give me a deed in the summer, when Aaron came down." The defendants objected, and excepted to its admission in evidence, but it was admitted.

The defendants then moved for a nonsuit, on the ground that the contract upon which the money was paid was made on Sunday; but the court declined to order a nonsuit, and the defendants excepted. The defendants then declined to offer any evidence, or to proceed further, and the court thereupon directed a verdict for the sum of forty-five dollars, and interest from August, 1857.

*C. W. Woodman*, for the defendants, to the point that the letters of the plaintiff were inadmissible, cited *Fairlee* v. *Denton*, 3 C. & P. 103 (14 E. C. L. 225); 1 Phill. Ev. 338; 1 Gr. Ev., sec. 124; *Robinson* v. *Railroad*, 7 Gray 92; *Gaskill* v. *Skene*, 14 Ad. & E. 664; and to the point that the contract was void because in violation of the Sunday laws, Comp. Laws 271, sec. 1; *Varney* v. *French*, 19 N. H.

233 ; *Allen* v. *Deming,* 14 N. H. 133 ; *Roby* v. *West,* 4 N. H. 285 ; *Woodman* v. *Hubbard,* 25 N. H. 67 ; *Gregg* v. *Wyman,* 4 Cush. 322 ; *Shiffner* v. *Gordon,* 12 East 296 ; *Lane* v. *Shackford,* 4 N. H. 130 ; *Ayer* v. *Hawkes,* 11 N. H. 151 ; *Fennell* v. *Ridler,* 5 B. & Cr. 406 ; Story on Cont. 146 ; 4 Peters 184 ; 2 Kent Com. 588 ; *Lawernce* v. *Taylor,* 5 Hill 107 ; *Luey* v. *Bundy,* 9 N. H. 299 ; *Dowdle* v. *Camp,* 12 Johns. 451 ; 6 East 611 ; *Davenport* v. *Mason,* 15 Mass. 55 ; *Booth* v. *Hodgdon,* 6 T. R. 405 ; 1 Pars. on Cont. 380 ; Long on Sales 133 ; 2 Kent Com. 588–591 ; *Holman* v. *Johnson,* Cowp. 343 ; *Brackett* v. *Hoitt,* 29 N. H. 264 ; *White* v. *Hunter,* 23 N. H. 128 ; *Buck* v. *Albee,* 26 Vt. 190 ; *Simpson* v. *Nichols,* 3 M. & W. 239 ; *Smith* v. *Sparrow,* 4 Bing. 84 ; *Lovejoy* v. *Whipple,* 18 Vt. 379 ; *Smith* v. *Bean,* 15 N. H. 577.

*Christie,* and *C. K. Sanborn,* for the plaintiff, cited *Smith* v. *Sparrow ; Adams* v. *Gay,* 19 Vt. 358 ; *Stackpole* v. *Symonds,* 23 N. H. 229 ; *Bloxsome* v. *Williams,* 3 B. & Cr. 232 ; Ch. on Cont. 375 ; 2 Pars. on Cont. 262 ; *Lovejoy* v. *Whipple,* 18 Vt. 379 ; *Goss* v. *Whitney,* 24 Vt. 187 ; *Hilton* v. *Houghton,* 35 Me. 143 ; *Norton* v. *Powell,* 4 M. & Gr. 42 ; *Clough* v. *Davis,* 9 N. H. 500 ; *Sargent* v. *Butts,* 21 Vt. 99 ; *Sumner* v. *Jones,* 24 Vt. 317 ; *Uhler* v. *Applegate,* 26 Penn. St. 140 ; *Rainey* v. *Copps,* 22 Ala. 288 ; *Clough* v. *Shepherd,* 31 N. H. 490.

NESMITH, J. The case finds that on the last Sunday in December, 1856, Simon E. Downs, one of the defendants, and a relative of the plaintiff, called upon him at his house, and proposed to sell to him a small tract of land, adjoining the plaintiff's homestead. The parties then agreed to the bounds of the land, the price, and time of payment, but agreed that no deed should be made out, until Simon's brother Aaron, who owned the land with him as co-partner, should come down to Milton, and

examine the land, and that he was not to come before the next ensuing summer. This was the extent of the negotiation made by the parties on Sunday. There was no agreement, or memorandum of the contract, reduced to writing, nor signed by the parties to be charged, agreeably to the requisites of the statute of frauds. The plaintiff paid no part of the consideration money. There was no contract completed, or consummated. There existed no more than an open parol proposition for a sale, contingent upon the future willingness of the plaintiff to pay the consideration, and the subsequent assent of the defendants to receive it, and upon the previous personal examination of the premises by Aaron, the co-tenant, and then, upon his assent to give the title. There were no contracting parties present and together on Sunday, competent to make and complete a binding contract. Simon had no written or other legal authority to bind his absent brother, nor did he propose to do so.

The defendants held the land as partners. It is well settled that real estate, conveyed to and held by partners, and though purchased by them, as partnership funds, and for the use of the partnership, is to be considered in law as the several property of the individual partner, and liable to be levied on for their separate debts. *Peck* v. *Fisher*, 7 Cush. 317. Upon the dissolution of a co-partnership, or the decease of a partner, the interest of each partner in the real estate belonging to the partnership, descends to his heirs at law, subject to the debts of the firm. *Pratt* v. *Oliver*, 3 McLean 27. Partners can have no legal seizin of land in their partnership capacity. *Mussey* v. *Holt*, 24 N. H. 257 ; *Jarvis* v. *Brooks*, 23 N. H. 136. Hence, one partner cannot bind the firm by a contract for the sale of their real estate, without special authority from his co-partner, unless, in a case where the buying and selling of real estate is the object of the partnership. *Lawrence* v. *Taylor*, 5 Hill 107. Therefore, Aaron was not bound by

the acts of Simon, to convey his interest in the land in question. The agreement, to be obligatory, must be mutual, binding both parties, or neither. The agreement is incomplete if either party can withhold assent to any of its important terms. Here, then, it appears that on the Sabbath there were no adequate consenting parties present, capable of making a valid contract. There was no existing mutuality in the proposed contract. There was nothing done upon which an action at law could be founded; or any agreement made, as it then stood, which, if made on a legal day, could be enforced, either at law or by any proceeding in equity. On Sunday, the mutual consent of all interested had not been obtained. It was in the power of either to recall their proposals. All the material requisites to a valid contract in relation to lands remained to be perfected upon some future day.

Accordingly, the plaintiff on his part, upon a subsequent legal day, advances the price of the land to the defendants, and then receives therefor, in return from them, some evidence of the existence of a contract about land. The principles involved in this case appear to be analogous to those settled in *Stackpole* v. *Symonds*, 23 N. H. 229. There, the defendant proposed to the plaintiff and his associates, on Sunday, to go on and perform a certain job of work on a railroad, and he would pay them therefor when the work should be completed. On Monday, the plaintiff and his co-laborers took the subject under consideration, and concluded to go on and finish the job. In this case, the court considered the language of the defendant on Sunday as no more than a proposition; and as it was not accepted on that day, there was, of course, no contract completed. If any thing remain to be done on some future day, the contract will not be void. It is not sufficient, to avoid a contract, that it grows out of a transaction commenced on Sunday. To render it void it must be closed or perfected on that day. *Clough* v. *Davis*, 9 N. H.

500; *Addison* v. *Gay*, 19 Vt. 358; *Lovejoy* v. *Whipple*, 18 Vt. 379; Ch. on Cont. 423; *Smith* v. *Bean*, 15 N. H. 577; *Bloxsome* v. *Williams*, 3 B. & Cr. 232; *Williams* v. *Paul*, 6 Bing. 653; *Goss* v. *Whitney*, 24 Vt. 317; *Butler* v. *Lee*, 11 Ala. 885; 8 U. S. Digest 337. In the summer of 1857 Aaron Downs went to Milton and inspected the land in question, and signified his unwillingness, or refusal to convey it to the plaintiff; also refused to refund the consideration received by him and brother. The letters in the case show a special demand, by the plaintiff, of the conveyance, or the money advanced for the land. When money is paid on a contract which is executory on the part of him who receives the money, and he altogether fails to fulfil his part of the contract, the injured party has an election, either to bring an action on the contract, to recover damages for its non-performance, or to consider it as rescinded, and recover back the money paid, as had and received to his use. *Luey* v. *Bundy*, 9 N. H. 300; *Lane* v. *Shackford*, 5 N. H. 133; *Ayer* v. *Hawkes*, 11 N. H. 150; *Griggs* v. *Austin*, 2 Pick. 20; *Carter* v. *Carter*, 14 N. H. 424. Money paid on an agreement, void by statute of frauds, which the defendant cannot, or will not complete, may be recovered back. Ch. on Cont. 622. In case such agreement be made for the sale of land, the plaintiff, before he can recover, must show that he has tendered the whole purchase money and demanded a deed. *Hudson* v. *Swift*, 20 Johns. 241.

The case, *Uhler* v. *Applegate*, 26 Penn. 140, quoted by the plaintiff's counsel, sustains the principles of this case. In that case an agreement was made on Sunday, upon which, had it been made on a week day, no action could have been maintained. It depended entirely for its validity, upon an act to be performed afterward, viz., the payment of $160. The payment was subsequently made on the understood terms. The court said that this constituted a perfect contract upon a valuable consideration, free

from any objection arising from the previous conversation on Sunday. In delivering the opinion, *Lewis*, C. J., says that it is not the intention of the law that its regard for the Sabbath should be made the means of perpetrating a fraud. It appears to us that neither the law or sound morality would place the parties in *pari delicto*. One of the defendants invades the domestic privacy of the plaintiff, on Sunday, becoming, in the sense of the statute law, the *disturber* of others, and then induces the plaintiff to place in the defendant's hands the consideration for the land. The plaintiff, after submitting to a long delay, asks for a deed of the land, and is taunted, by the answer, that he can neither have the land or his money. The court will afford relief to the more innocent party, where equity requires it. *Schemerhorn* v. *Talman*, 4 Kern. 93 ; *Tracy* v. *Talmadge*, 4 Kern. 162. The letters which passed between the parties to a contract immediately before and after the transaction, may be so connected with, and relate to it, as to become part of the *res gestæ*, and therefore admissible evidence. *New-England Ins. Co.* v. *De Wolfe*, 8 Pick. 56 ; *Gaskill* v. *Skene*, 14 Ad. & E., 68 E. C. L. 664.

For these reasons, we think, there should be

*Judgment on the verdict.*